F. Meyer Boot & Shoe Co. v. C. Shenkberg Co. *et al.*

1. A judgment creditor may maintain a suit to set aside conveyances or incumbrances of personal property by the judgment debtor, claimed to be fraudulent.

2. Provisions of a chattel mortgage on a stock of merchandise, permitting the mortgagor to retain possession and sell at retail, and from the proceeds to replenish the stock and support his family, paying the remainder to the mortgagee, do not necessarily render the mortgage invalid, in the absence of an actual fraudulent intent.

3. Special findings of a jury on questions submitted to it in an equity case are merely advisory, and not binding on the court, and are entitled to but little weight on appeal, as against contrary findings made by the court itself.

(Opinion filed September 2, 1899.)

Appeal from circuit court, Lincoln county. Hon. Joseph W. Jones, Judge.

Action by the F. Meyer Boot & Shoe Company against the C. Shenkberg Company and N. Smith, to have declared void and set aside certain conveyances of personal property and for other relief. Judgment for defendants and plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*C. B. Kennedy,* for appellant.

The mortgage to defendants was a fraud upon the creditors of Curtis and was void. Bookstoff v. Snyder, 74 N. W. 863; Greeley v. Winsor, 1 S. D. 117.

The transactions involved in the bills of sale from Curtis to Shenkberg Company and from Shenkberg Company to Smith, and the agreement by Smith with Curtis, were also fraudulent, and render the bills of sale void. Brink v. Comfort, 4 Dak. 167; Newell v. Wangness, 1 N. D. 62, 44 N. W. 1014; Means v. Dow, 9 Sup. Ct. Rep. 65; Corbett v. Cutcheon, 44 N. W. 163; Pabst Brew. Co. v. Butchart, 69 N. W. 109; Johnson v. Sage, 44 Pac. 640.

*Aikens & Judge,* for respondents.

This action, being in equity in the nature of a creditor's bill cannot be maintained under the law of this state and the undisputed facts. Appellants remedy, if any, is by proceedings supplementary to execution.

The execution being returned unsatisfied and none other issued, appellant's case fails. Paulson v. Wood, 58 N. W. 793; Griswold v. Sundback, 4 S. D. 453; Yetzer v. Young, 3 S. D. 268.

The provisions of the mortgage did not render it fraudulent. Mckay v. Shotwell, 6 Dak. 124; Young v. Harris, 4 Dak. 373.

The testimony of Curtis as to statements and negotiations made at the time of the execution of the mortgage, and which materially altered and changed the terms of the instrument, was inadmissible in evidence. Dean v. Bank, 6 Dak. 222.

CORSON, P. J. This is an action in equity brought by the plaintiff, a corporation, against the defendants, in which it prays the court to set aside a certain chattel mortgage on a stock of goods executed by one W. H. Curtis to one C. Shenkberg, and declare a bill of sale of the said Curtis to the C. Shenkberg Company, a corporation, and a bill of sale made by the said C. Shenkberg Company to the defendant N. Smith, void, and that defendants be required to pay the value of the stock described in the said mortgage and bills of sale into court, to be applied upon a judgment obtained by the plaintiff against said W. H. Curtis, and for such other and further relief as the court, in equity and good conscience, may deem just. The complaint in the action is very lengthy, and sets out the transactions in which Curtis, who was the original owner of the goods, and who is in the complaint alleged to be insolvent, mortgaged the said stock of goods to C. Shenkberg for the benefit of the C. Shenkberg Company, the Powers Dry-Goods Company, and Jewett Bros. & Jewett, and subsequently trans-

ferred the same to the said C. Shenkberg Company by a bill of sale and the making of a bill of sale by the C. Shenkberg Company to the defendant N. Smith who at about the same time made a contract with Curtis to resell the property to him. The plaintiff also states in its complaint that it obtained a judgment against the said Curtis, and caused an execution to be issued, which was returned unsatisfied. The case was tried by the court, and certain questions of fact were submitted to a jury, and found in favor of the plaintiff. Subsequent to the trial, and before any findings of fact had been made by the court, the defendants moved the court for judgment as prayed for in their separate answers, notwithstanding the verdict of the jury, for the following reasons: "First, that, upon all the evidence in the case, the said plaintiff is not entitled to any equitable relief against the defendants, or either of them; second, that, upon all the evidence, the said defendants are entitled to the relief demanded in their separate answers; third, that the evidence is insufficient to sustain any judgment in favor of the plaintiff and against the defendants, in that it is not sufficient to impeach or render void the sales of the property in controversy, from W. H. Curtis to C. Shenkberg Company, and from C. Shenkberg Company to N. Smith." This motion was granted by the trial court, and it was ordered that findings of fact, conclusions of law, and judgment be made and filed, dismissing the action upon its merits, together with said defendants' costs and disbursements. Thereupon findings of fact were made, among which, in substance, was the following: That Curtis was indebted to the plaintiff in the sum of $917.51; that plaintiff brought an action against the said Curtis in the proper court, by service of sum-

mons and complaint; that judgment was duly recovered against the said defendant for said sum, and was duly entered; that afterwards plaintiff caused an execution to be issued upon said judgment, and placed in the hands of the sheriff of Lincoln county for service; that said execution was returned wholly unsatisfied; that no levy was made by the said sheriff upon any property under and by virtue of the said execution; that there was no seizure or taking possession of the property, or any part thereof, under and by virtue of any execution issued upon the said judgment rendered in favor of the plaintiff and against the said Curtis.   The court further found that the said Curtis was indebted to the C. Shenkberg Company and said other firms in the aggregate sum of $3,599.54; that it was mutually agreed between the said C. Shenkberg Company and the other firms mentioned and the said Curtis that said Curtis should make and deliver to the said C. Shenkberg a chattel mortgage to secure the said $3,599.54, and that in pursuance of the said agreement he did so execute the same, which chattel mortgage was duly filed for record; that said mortgage was given for a good and valuable consideration, and without any intent or purpose on the part of the mortgagor, the mortgagee, or any of the parties interested therein, to hinder, delay, or defraud any of the other creditors of the said Curtis; that the same was made, executed and delivered unconditionally, without any reservation to the said mortgagor, and for the sole and only purpose of securing the aforesaid claims to the C. Shenkberg Company and the other firms interested; that said mortgagor, Curtis, retained possession of the stock of goods, etc., until on or about the 27th day of February, 1895; at about which time, by an agreement in writing, said Curtis, in good faith, turned

over to Smith, as agent for himself and C. Shenkberg, all of said property so mortgaged as aforesaid; that there was due upon said mortgage indebtedness the sum of $3,265.27; that said defendant continued in possession of the said property until May 23, 1895, and during that time he (Curtis) and all the parties interested acted in good faith, and without any intent to hinder, delay, or defraud any of the other creditors of the said Curtis; that on the said 23d day of May the said Curtis sold and delivered to the C. Shenkberg Company, defendant, in consideration of the sum of $3,267.27, all of the property remaining undisposed of, included in the said mortgage; that said company by virtue of the said sale took possession of all of the property; that said sale of the mortgaged property was made for a good and valuable consideration, and without any intent to hinder, delay, or defraud any of the other creditors of the said Curtis; that, on the 23d day of May aforesaid, said C. Shenkberg Company, in consideration of the sum of $3,267,-27, sold and delivered the said stock of goods to the said defendant Smith; that said last-mentioned sale was made in good faith, and for a good and valuable consideration, and without any intent to hinder, delay, or defraud any of the other creditors of the said Curtis; that said Smith at about the time of the sale of the said stock of goods from the said C. Shenkberg Company entered into a written agreement with said Curtis to transfer the said property to him upon payment of the said $3,267.27 on or before the 1st day of January, 1896; and that said Curtis has never complied with the said conditions of the said contract, and said property has never been reconveyed to him. The court states as its conclusions of law, among others, that the plaintiff failed in his action to establish any right of recovery

or relief against the defendants, and that the defendants are entitled to judgment dismissing the complaint, together with their costs and disbursements, and upon these findings judgment was entered in favor of the defendants. From this judgment, and an order denying a new trial, plaintiff appeals to this court.

The respondents insist that the judgment of the court is correct, for the reason that the plaintiff cannot maintain a creditors' bill in this state against the parties in the possession of personal property which such plaintiff claims to belong to the judgment debtor. They insist that the only remedies that the plaintiff had was to have levied upon the property under the execution, and, if its right to take the same was contested, to have that right determined by an action at law, or to proceed under the provisions of the statute known as "proceedings supplementary to execution." This view of the respondents, however, is in opposition to the decisions of the late territorial supreme court in Feldenheimer v. Tressel, 6 Dak. 265, 43 N. W. 94, in which case that court, after a careful review of the authorities, held that a creditor in this state could maintain an action to set aside fraudulent sales or incumbrances on the part of judgment debtors. That decision seems to have received the sanction of all the judges constituting the late supreme court, and mnst be regarded as settling the law in this state. See, also, Murtha v. Curley, 90 N. Y. 372; Southard v. Benner, 72 N. Y. 424.

The appellant contends that the findings of the court in regard to the chattel mortgage and bills of sales from Curtis to the C. Shenkberg Company and from said company to N. Smith are not supported by the evidence. It is claimed by the

appellant that the agreement made with Curtis by Kennedy, as the agent of the C. Shenkberg Co., the Powers Dry-Goods Co., and Jewett Bros. & Jewett, at the time he executed the chattel mortgage, clearly shows that the mortgage was made with the intent to defraud the creditors of Curtis, and that the sales from Curtis to the C. Shenkberg Company, and by it to N. Smith, were also made to defraud the creditors of Curtis. The evidence of Curtis as to this agreement is substantially as follows: "The agent of the C. Shenkberg Company stated, if I would give the mortgage, I would be protected from the other creditors; that is, they would be cut off, and would have no more chance to bother me. He further stated that C. Shenkberg Company was to let me go on and do business as before, and my family were to be sustained from the store; that I was to be at the helm, the same as before; I was to keep up a suitable stock of goods, and run it just as if nothing had happened, and, if I paid them before the following October, they were to give me or my wife a bill of sale of the said stock." It will be noticed that this agreement is, in substance, the same as that contained in the mortgage. The mortgage provided that Curtis should remain in possession, and sell the goods in the usual course of trade, and apply the proceeds to keeping up the stock, and the balance to the satisfaction of the mortgage debt. Curtis, as mortgagor, therefore, was to remain in possession, and would necessarily be at the head and manage the business, and when the amount of the indebtedness was paid the balance of the stock of goods unsold would revert to him. The only stipulation in the agreement not contained in the mortgage, in effect, was that by which Curtis was given the right to take from the store his necessary family supplies; but it is to be remembered

that, under the terms of the mortgage, Curtis was permitted to remain in possession, and dispose of the goods, and turn over the proceeds, after replenishing the stock, to the mortgagee. The stipulation in the mortgage authorizing the mortgagor to use a part of the proceeds of the sale in replenishing the stock is supported by McKay v. Shotwell, 6 Dak. 124, 50 N. W. 622; and the right of the parties to permit the mortgagor to retain the possession, sell the goods at retail, and pay over the proceeds to the mortgagee, is clearly recognized by the courts of many of the states, including this state. Lane v. Starr, 1 S. D. 107,45 N. W. 212; Wilcox v. Landberg, 30 Minn. 93, 14 N. W. 365; Felner v. Wilson, 55 Ark. 77, 17 S. W. 587; Ephraim v. Kelleher [Wash.] 29 Pac. 985; Whitson v. Griffs, 39 Kan. 211, 17 Pac. 801, and by the supreme court of the United States (Robinson v. Elliott, 22 Wall. 513; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565). Curtis, therefore, while in possession of the goods, and disposing of the same for the benefit of C. Shenkberg, was acting as the agent of C. Shenkberg, and was, like any other agent, entitled to a reasonable compensation for his services. It is not claimed that the amount taken from the store during the time Curtis was in possession was an unreasonable amount for the support of his family. While such a contract between the mortgagor and the mortgagee should be carefully scrutinized by the court, it does not necessarily follow that the same is evidence of a fraudulent intent on the part of either. In the recent, well considered case of Red River Val. Nat. Bank v. North Star Boot & Shoe Co. (decided by the supreme court of North Dakota) 79 N. W. 880, that court had under consideration a stipulation made between the mortgagor and the mortgagee by

which the mortgagor was allowed to deduct a salary of $100 per month for his services while disposing of the goods for the benefit of the mortgagee; and the court held that such an arrangement was not necessarily fraudulent, or evidence of a fraudulent intent. Curtis was authorized to secure the C. Shenkberg Company and the other firms specified, by chattel mortgage or otherwise, in preference to his other creditors. Section 4654, Comp. Laws. What has been said in regard to the chattel mortgage applies equally to the bills of sale.

It appears that after the chattel mortgage was executed, and up to the time the possession of the stock of goods was turned over to Smith as the agent of the parties, there was only a small reduction of the amount due under the mortgage, and the same seems to have been the case while the goods were in the possession of Smith; but this is accounted for by reason of the outlay for the large amount of goods, the purchase of which was necessary in order to maintain the stock in a salable condition. It also appears from the findings that Smith, at about the time he purchased the stock of goods from the C. Shenkberg Company, entered into an agreement with Curtis that, if Curtis should pay the amount Smith had paid for the goods, Smith would resell the stock to him; but we fail to discover from any of these transactions any evidence of an actual intent to defraud the other creditors of Curtis. The important question in this class of cases is, was the mortgage given to secure a *bona fide* indebtedness, and for the benefit of the creditors, or was the mortgage given as a mere sham to cover up the property and protect the mortgagor from the claims of his creditors? It is essential therefore, that there should be a valid, subsisting debt, which the mortgage is giv-

en to secure, and that the object and purpose of the mortgage should be to secure the payment of that debt. If such is the real object and purpose of the parties, and the property is in good faith appropriated to the payment of the debt, then the transaction should be sustained. It is not controverted in this case that the amount for which this mortgage was given was actually due from Curtis to the C. Shenkberg Company, the Powers Dry Goods Company, and Jewett Bros. & Jewett; and it clearly appears from the evidence that Kennedy, as the agent of those creditors, induced Curtis to make the mortgage in controversy to secure them, and that the property was subsequently sold to N. Smith for the purpose of paying off the said indebtedness. We are of the opinion, therefore, that the evidence fully justified the findings.

Appellant strenuously insists that as a jury was impaneled to try the issues of fact, and found special findings to the effect that the mortgage from Curtis to C. Shenkberg, and the sale by Curtis to the C. Shenkberg Company and from it to N. Smith, were made with the intent to defraud the other creditors of Curtis, the court should have adopted those findings, and made them a part of its findings in this case. But it is well settled that the special findings of the jury in an equity case are merely advisory to the court, and may be either adopted, or set aside, and other findings made by the court in opposition thereto. The special findings of the jury are not binding upon the court and are entitled to but little weight in this court, as against the findings actually made by the court itself. In this case the court was clearly justified in setting aside and disregarding the special findings of the jury, as they were not sustained by the evidence.

It is further contended that on the part of the appellant that the court erred in excluding certain evidence on the part of the appellant. The first relates to certain evidence as to the inducements held out to Curtis by the agent of the C. Shenkberg Company to make the mortgage. Mr. Curtis in stating the conversation had with the agent of the C. Shenkberg Company, said: ''We talked around awhile, and finally Mr. Kennedy, I think, suggested that, as we were all Masons, it would be all right—that they would do the fair thing by me—and that opened me up a little. I thought, of course, if they were Masons, and honorable men, they would stick to any contract they made under these conditions, and so I says to them, point blank,—to both of them,— in so many words, 'Will you give me your Masonic honor, and on the dead square?''' To this defendant made the following objection: "Defendant's counsel objects to any evidence of the matters of the character the witness testifies to, for the reason, if they were true, they were privileged." The objection was sustained. Appellant then asked the following question: "Go on and tell the jury what inducement they offered you in order to get the mortgage." This question was also objected to, and the objection sustained. We think the ruling of the court in sustaining the objection on the ground stated was erroneous, but it does not follow that the error entitles the appellant to a reversal of this case. It appears by the record that subsequently Curtis was allowed to state substantially all that had occurred between the parties at the time this mortgage was given, and the error, if any, was therefore cured. The judgment of the circuit court is affirmed.