## FIRST NATIONAL BANK OF CUSTER CITY V. CALKINS.

1. A purchaser of a herd of horses mortgaged them to plaintiff to secure a *bona fide* loan, and before the mortgage was recorded the seller brought suit to set aside the sale for incapacity on his part, etc., but, before judgment was entered therein in his favor, plaintiff, which was not a party to that suit, foreclosed the mortgage, and purchased the horses, of which the seller took possession. *Held*, in an action by the mortgagee to recover the horses, that the judgment roll in the previous action to set aside the sale was admissible.

2. Where the seller of a herd of horses was required by a judgment setting aside the sale for his incapacity to pay the purchaser a certain sum, but the purchaser had disposed of a portion of the herd, the value of which was greater than the sum the seller was required to pay him, the seller will not be required to make any further payment on account of such judgment.

3. The fact that a mortgagor of chattels knowingly allowed the mortgagee to sell and convert to his own use a portion thereof does not necessarily render the mortgage void as to creditors or incumbrancers in good faith, since the question of fraudulent intent is one of fact for the jury.

(Opinion filed January 18, 1900.)

Appeal from circuit court, Faulk county. Hon. LORING E. GAFFY, Judge.

Action in claim and delivery by the First National Bank of Custer City against Israel Calkins. From a judgment for defendant, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*J. H. Bottum* and *Martin & Mason,* for appellant.

The court erred in admitting in evidence the judgment roll in the case of Calkins v. Perkins and in not permitting the plaintiff to dispute the findings of alleged facts upon which the decree in that case was based. Black on Judg. §§ 219, 534, 549, 550; Leitch v. Wells, 48 N. Y. 585; Wakefield v. Van Doon, 73 N. W. 226; Comly v. Dudley, 69 N. W. 151; Barkley v. Leiter, 68 N. W. 381.

The court erred in permitting the defendant to show compliance on his part with the decree in the former case after the commencement of this action. Wells on Rep. §§ 32, 34; Campbell v. Williams, 39 Ia. 646.

Perkins was not a creditor of the defendant Calkins, and the law of fraudulent transfers has no application to this case. Comp. Laws §§ 4653, 4652, 4659, 3421; 1 Cobby Chat. Mort. § 192; Malcom v. Loverdedge, 13 Barb. 372.

A chattel mortgage not filed is void only against creditors and subsequent purchasers and incumbrancers for value. Comp. Laws, § 4379. Delay in filing a chattel mortgage is not

a badge of fraud and can be complained of only by those preju-
diced by the delay.    Mercantile Co. v. Gardiner, 5 .S. D. 246;
Bank v. North, 2 S. D. 490.

The court erred in instructing the jury to the effect that if
the bank permitted Perkins to dispose of horses without re-
quiring him to account for the proceeds the mortgage was void.
Greeley v. Winsor, 48 N. W. 214; *Id.* 45 N. W. 325; Comp.
Laws § 4659; Jones Chat. Mort. § 340; Cobby Chat. Mort. 219,
312; Bank v. Bates, 120 U. S. 361; Etheridge v. Sperry, 139
U. S. 266.

*Frank Turner* and *G. M. Cleveland,* for respondent.

CORSON, J.    This is an action in claim and delivery.    Ver-
dict and judgment for the defendant, and the plaintiff appeals.
To fully understand the questions presented, a brief statement
of facts will be necessary.    In 1891 the defendant, Israel
Calkins, was the owner of a band of horses ranging in Custer
county and vicinity.    Some time during that year he sold and
delivered the horses to one Levi W. Perkins, and executed to
him the usual bill of sale therefor.    Perkins, at about the time
of his purchase, executed notes to the plaintiff bank for $2,600,
and to secure the same executed a chattel mortgage on the
band of horses so purchased by him of Calkins.    In 1893 these
notes were renewed, and a new chattel mortgage executed, and
delivered to the bank to secure the payment of the renewal
notes.    This chattel mortgage was not recorded until some
time in 1895.    In 1897, the bank, claiming that the sum secured
by the chattel mortgage had not been paid, foreclosed the
same by advertisement, and bid in the property for less than
the amount claimed to be due in the name of the bank, and it is

under this foreclosure sale and purchase that the bank now claims title to and right of possession of the band of horses claimed in this action. In 1893 the defendant, Calkins, claiming that at the time he made the bill of sale to Perkins he was of unsound mind, and that the price paid him by Perkins was inadequate, brought an action in the circuit court of Lawrence county to set aside and rescind the sale, and praying that he be restored to the possession of the band of horses so transferred by him to Perkins. The plaintiff bank was not made a party to this action. The place of trial of the action of Calkins against Perkins was subsequently changed to Custer county, where the action was tried in 1897, resulting in a judgment in favor of Calkins. Thereupon Calkins took from the possession of the plaintiff bank the band of horses mortgaged to it by said Perkins, and bid in by it at the foreclosure sale as aforesaid. It will thus be seen that the plaintiff claims the property under the Perkins mortgage and its foreclosure, and the defendant, Calkins, claims the property by virtue of his original ownership of the same and the judgment in the case of Calkins against Perkins setting aside the sale made in 1891, and adjudging him to be the owner of the property. The defendant, by his answer, admits the taking of the property described in the complaint from the possession of the plaintiff, but denies that said taking was unlawful or wrongful. He further alleges that on the 27th day of August, 1897, the plaintiff wrongfully took the property described in the complaint from the possession of the defendant, and still detains the same, and prays for judgment for the return of the property, and, if its return cannot be had, the value of said property, namely, $2,800, and $200 for its detention, and costs. The defendant contended and sought

to prove on the trial that the chattel mortgage from Perkins to the bank was fraudulent and void.    To sustain this theory,  he gave evidence tending to show that the chattel mortgage was kept from record from 1893 to 1895, and that Perkins, who re-tained possession of said mortgaged property, sold portions of said  property  from  time to time with the knowledge and con-sent of the bank, and applied the proceeds of such sales to  his own  use,  and  was not required by the bank to account for the same in any manner.

The evidence in the case is quite  voluminous,  and  it will not be necessary, in the view we take of the case, to reproduce any portion of it in this opinion.    It will  be  sufficient  to  say that the defendant does not seem to question the fact  that  the plaintiff bank actually advanced to Perkins the amount of mon-ey which the chattel mortgage was given to secure.    In the course of the trial the defendant introduced in evidence the judgment roll  in  the  case of Calkins against Perkins.    This was objected to on the grounds:   (1) That the plaintiff bank was not a party to said action; (2) that neither the summons, complaint, nor any other proceeding in the case of Calkins against Perkins was of record until long subsequent to the acquisition of the rights of the plaintiff bank under its mort-gage executed by Perkins in 1893; (3) that, as Calkins admits the sale and delivery of the property to Perkins, who retained the possession thereof subject to the bank's mortgage until the foreclosure and sale of the property by the bank in 1897, the title of the bank is valid as against Calkins until vacated and set aside by a judgment of a court in an action against the bank.    The court overruled the objections, and admitted the judgment roll, without passing upon its legal effect at that

time. Counsel for plaintiff then made the further objection to the admission of the judgment roll in evidence that in and by the terms of that judgment it was provided that there was due from Calkins to Perkins the sum of $372.88, growing out of the transaction, which, by the judgment, Calkins was required to pay to Perkins before any execution could be issued upon the judgment, and before Calkins had the right to take possession of the property, and that there had been no evidence introduced by Calkins proving or tending to prove that said sum had ever been paid or tendered before the commencement of this action. This objection was also overruled. Counsel for plaintiff moved to strike out from the judgment roll as read all except the decree or judgment, and counsel specifically objected to the reading to the jury of the findings of fact and conclusions of law upon the ground that they were incompetent, irrelevant, and immaterial as between Calkins and the plaintiff bank. This motion was also overruled by the court, and the whole record read to the jury. We are of the opinion that these objections made to the introduction of the judgment roll in evidence were not well taken. It is true the bank was not a party to the action of Calkins against Perkins, but, even as against the bank, it was competent for the defendant to introduce this record in evidence. Possibly it might have been sufficient to have introduced the judgment only, but we can see no objection to the introduction of the entire judgment roll.

The only question as to which we have had some doubt was as to the failure of Calkins to show that he had paid or tendered to Perkins, before this action was commenced, the amount that he was required to pay by the terms of the judgment; but as it did appear from the evidence that, subsequent to the entry

of the judgment in the case of Calkins against Perkins, Perkins had disposed of property included in the judgment of greater value than the amount required to be paid him by Calkins, it would seem that Perkins by his own act in disposing of a portion of the property, was, in effect, paid the amount adjudged to be paid him by the decree, and it would, therefore, be both inequitable and unjust to require of Calkins further payment on account of the said judgment. The court, in his charge to the jury, gave the following instructions upon the request of the plaintiff: "The jury are instructed that, in order to find for the defendant in this case, they must be able to find from the evidence that the mortgage of February 25, 1893, from Levi W. Perkins to the First National Bank of Custer City, was made by Perkins and received by the bank with intent to defraud the defendant, Calkins. If the jury shall find from the evidence that the mortgage was not made with such fraudulent intent, but in good faith to secure the debt of Perkins to the bank, then the defendant cannot recover, and your verdict should be for the plaintiff on all the issues. * * * The jury are instructed that it is not, in this case, disputed that Mr. Perkins was, at the time of the making of the chattel mortgage through which the plaintiff claims title to the property, indebted to the plaintiff in the sum of $2,600 for money loaned to him by the plaintiff. This being true, the bank had the right to take security from Perkins on the property in question, unless the bank at the time had knowledge that the sale from Calkins to Perkins was fraudulent or voidable. Unless, therefore, the jury shall find from the evidence that the bank had such knowledge when it took its mortgage on February 25, 1893, or that said mortgage was otherwise fraudulent, such mortgage would be lawful, and the title acquired by the bank in its fore-

12 S. D.—27

closure is valid, and your verdict should be for the plaintiff."
The court, upon his own motion, charged the jury, among other
matters, as follows: "I charge you, gentlemen of the jury,
that if you find, by a fair preponderance of the testimony, that
Levi W. Perkins sold the property covered by the mortgage of
the plaintiff during the life of the mortgage, and appropriated
that property to his own use and benefit, with the consent of
the plaintiff bank, then, and in that case, the mortgage would
be fraudulent as against creditors and incumbrancers in good
faith." Subsequently the jury came into court for further in-
structions, and propounded to the court the following question:
"The jury wishes me to ask you if Mr. Perkins' failure to ac-
count to the bank of Custer for the amount he sold the horses
for invalidated the mortgage of the IC brand of horses. O. P.
Howe, Foreman." The court thereupon, not being able to find
the respective counsel, wrote upon the back of the paper con-
taining the question the following instruction: "The jury are
instructed that Perkins' failure to account does not of itself in-
validate the mortgage, unless the bank knowingly permitted it.
If the bank knowingly allowed Perkins to sell and convert to
his own use those horses of the IC brand, then the mortgage is
void." Thereafter the jury returned a verdict in favor of the
defendant, finding the value of the property at $1,637. It is
contended by counsel for appellant that these instructions to
the jury were clearly erroneous, and that the fact that the jury
asked further instructions upon this identical question after
they had retired, and the erroneous instruction first given was
repeated to them, shows clearly that this instruction had very
great weight with, if it did not entirely control, the jury in
their verdict. It will be noticed that the court distinctly an-

nounces to the jury, both in his original charge to them and in his charge in reply to the question propounded, that, "if the bank knowingly allowed Perkins to sell and convert to his own use the horses in controversy, then the mortgage is void." In giving these instructions we are of the opinion that the learned circuit court committed error for which the judgment in this case must be reversed. This court has repeatedly held that the question of whether or not a chattel mortgage was executed with a fraudulent intent is a question of fact for the jury, and the most that can be said for any given state of facts is that they may make the mortgage presumptively fraudulent, but subject to be rebutted by proof, and not absolutely void. Greeley v. Winsor, 1 S. D. 117, 45 N. W. 325; *Id*, 1 S. D. 618, 48 N. W. 214; Mercantile Co. v. Gardiner, 5 S. D. 246, 58 N. W. 557; Bank v. North, 2 S. D. 480, 51 N. W. 96. In Greeley v. Winsor, *supra*, this court, on rehearing said: "It is well known that in many of the states such a mortgage is held, in law, conclusively fraudulent; but, conscious that there are many cases where kindred provisions, apparently vicious, are not fraudulent in fact,—provisions whose fraudulent complexion may be changed by explanatory and affirmative evidence of good faith,—we think the rule best calculated to work justly in most cases, and unjustly in the fewest, is that such mortgages should be held presumptively fraudulent only, leaving in every case the suspicion which attaches to such a mortgage to be overcome and removed, if it can be, by evidence showing the entire *bona fides* of the parties in the transaction towards other creditors." Again, in Mercantile Co. v. Gardiner, *supra*, this court said: "But the presumption against the *bona fide* character of the mortgage was a rebuttable one, and upon substantial evidence

tending to show its actual good faith, the question as to its real character became a question of fact. Greeley v. Winsor, *supra.* This conclusion was deliberately reached by this court upon careful consideration, and after reargument, and it is the law of this jurisdiction. Therefore we do not stop to examine the cases cited by appellant, holding such a mortgage conclusively fraudulent." In addition to the cases cited, see Jones, Chattel Mortg. 340; Cobbey, Chattel Mortg. 219; Bank v. Bates, 120 U. S. 561, 7 Sup. Ct. 679, 30 L. Ed. 754; Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 663, 35 L. Ed. 171. By Section 4659, Comp. Laws. it is provided: "In all cases arising under Section 3298, or under the provisions of this title, except as otherwise provided in Section 4657, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulently solely on the ground that it was not made for a valuable consideration." It will be seen that in this state the question of fraudulent intent is a question of fact to be determined by the jury. The learned circuit court, evidently in the hurry of the trial, overlooked the distinction between a mortgage that might be held presumptively fraudulent, but which might be held valid by a jury from the evidence introduced on the part of the mortgagee, and one void as a matter of law. In the latter case, if the jury believed from the evidence that Perkins did in fact dispose of portions of the mortgaged property, and apply the proceeds to his own use, with the knowledge and consent of the bank, they had no alternative but to hold the mortgage to the bank void, and find for the defendant It might, in many cases, result in a great injustice to the mortgagee whose mortgage has been executed in perfect good faith to secure a valid indebtedness, but who, under the

belief that his security was ample, should permit the mortgagor to dispose of portions of the mortgaged property, and convert the proceeds to his own use, to hold his mortgage absolutely void. Hence the rule adopted in this state, leaving the question of fraudulent intent a question of fact to be determined by the jury.

If the mortgage in this case was executed in good faith, and for the purpose of securing a bona fide indebtedness due the mortgagee, the mere fact that the mortgagor, with the knowledge and consent of the mortgagee, sold some portion of the property, and applied the proceeds to his own use, does not necessarily render the mortgage void. In such a case the mortgagee might, in favor of creditors, subsequent purchasers, or other parties interested in the mortgaged property, be required to credit his mortgage security with the value of the property so sold by the mortgagor with his knowledge and consent. In other words, the mortgagee would be required to apply the value of the property so sold with his knowledge and consent to the reduction of his mortgage in a proper proceeding and under proper pleadings. Lane v. Starr, 1 S. D. 107, 45 N. W. 212. If this mortgage, in its inception. was executed in good faith to secure a valid subsisting indebtedness, and not for the purpose of hindering, delaying, or defrauding the creditors of the mortgagor, it does not neccessarily become fraudulent and void by reason of the failure of the mortgagee to require the mortgagor to pay over the proceeds of all sales of the property made by him to be applied upon the mortgage. As this court said in F. Meyer Boot & Shoe Co. v. C. Shenkberg Co., 11 S. D. 620: 80 N. W. 126; "The important question in this class of cases is, was the mort-

gage given to secure a *bona fide* indebtedness, and for the benefit of the creditor, or was the mortgage given as a mere sham to cover up the property, and protect the mortgagor from the claims of his creditors? It is essential, therefore, that there should be a valid subsisting debt which the mortgage is given to secure, and that the object and purpose of the mortgage should be to secure the payment of that debt." If there is an agreement in the mortgage itself that the mortgagor shall have the right to sell and dispose of the mortgaged property, and apply the proceeds to his own use undoubtedly, as held by this court in Greeley v. Winsor, *supra*, the mortgage would be presumptively void, but such presumption is a rebuttable one, and may be overcome by evidence on the part of the mortgagee that the mortgage was executed in good faith, and that there was in fact no intent to hinder, delay or defraud the creditors of the mortgagor. The fact that the mortgagor has sold and disposed of portions of the mortgaged property, and has applied the proceeds to his own use, with the knowledge and consent of the mortgagee, though not so stipulated in the mortgage, would be a circumstance to be taken into consideration by the jury, in connection with the other evidence in the case, in determining the question of whether or not the mortgage was executed with the intent of defrauding creditors, but such sale would not *per se* render the mortgage void. In no view of the case can the charge of the court be sustained. It is quite apparent from the record in this case that the jury were very largely influenced in their verdict by this instruction, and its effect was not cured by any other instruction of the court. The judgment and order denying a new trial are reversed, and a new trial is ordered.