ERICKSON, Appellant v. GILL et al., Respondents

(98 N.W.2d 321)

(File No. 9720. Opinion filed September 25, 1959)
Rehearing denied October 29, 1959

**L. A. Melby,** Faulkton, and **L. F. Ericsson,** Madison, for Plaintiff and Appellant.

**H. L. Woodworth,** Ipswich, for Defendant and Respondent.

**Jarvis W. Brown,** Faulkton, and **Robert G. Gross,** Ipswich, for garnishee and Respondent.

HANSON, P. J. This is a garnishment proceeding brought by the plaintiff, Harvey E. Erickson, in aid of execution of his judgment against the defendant, Edwin L. Gill. The issues were submitted to a jury which returned a verdict in favor of the garnishee defendant, Forrest Snider. Plaintiff appeals from the judgment rendered therein.

In 1953 the plaintiff Erickson and defendant Gill both taught school at Onida, South Dakota. During that year they purchased the Gamble Store at Faulkton and operated the business as partners until September 1953 at which time Erickson sold out to Gill. In consideration Erickson accepted Gill's unsecured promissory note in the amount of $6,158. Thereafter Gill operated the business as sole owner.

The business apparently did not prosper and in March 1955 Gill borrowed $2,000 from Forrest Snider, a farmer living near Faulkton. On May 1, 1955, Snider loaned Gill an additional $2,000. Snider's loans were then consolidated into one promissory note in the amount of $4,174 secured by a chattel mortgage on all of the Gamble Store fixtures and stock of goods, including replacements and additions thereto. The mortgagor was allowed to retain control and possession of the mortgaged property with the right to sell from stock in the usual course of trade. The mortgagor was required to maintain the stock of goods at all times at a value of $4,000 or more.

Before accepting the mortgage Snider checked the records in the office of the Register of Deeds for other creditors.

He found no mortgages, judgments, or other liens of record against any of the business property. Gill had previously informed Snider he owned his former partner some money but did not advise him of the amount, nor did he advise Snider of the amount or nature of his other obligations. In addition to plaintiff, Gill owed sizeable sums to his mother-in-law and sister-in-law, together with many other smaller obligations. The actual total amount owed by Gill exceeded the amount of his assets. All of his creditors, like the plaintiff, were unsecured and unknown to Snider.

After May 1955 the volume of business steadily declined until Gill closed the store on August 6. Thereafter Snider took possession of the property under his mortgage and commenced foreclosure proceedings. The property was sold at public sale by the Sheriff of Faulk County on September 24, 1955 to Snider, the only bidder, for the sum of $2,000.

On August 16, 1955 Erickson obtained judgment against Gill for the sum of $5,950.37. On September 24, 1955 in aid of execution of his judgment Erickson garnisheed Forrest Snider and the Sheriff of Faulk County for the value of the store fixtures and stock of goods. Snider answered denying liability as garnishee and asserted his right to the possession and control of the property as mortgagee under the mortgage.

Before trial Gill filed a so-called "Disclaimer of Interest and Application for Substitution" wherein he disclaimed all interest in the garnisheed property. He further alleged he had been adjudged a bankrupt on February 6, 1956 and the trustee in bankruptcy had succeeded to all rights, claims and liabilities which he might have in the garnishment proceedings. The trustee in bankruptcy made no appearance and asserted no claim to the property.

Pursuant to SDC 37.2824 the issue of liability was submitted to a jury which returned a verdict in favor of the garnishee defendant Snider. On appeal plaintiff contends the trial court erred (1) in the giving and refusing of certain instructions relating to the insolvency of the defendant Gill; (2) in refusing to allow plaintiff to cross-examine defendant

Gill as an adverse party; and (3) in unduly restricting the cross-examination of the garnishee defendant Snider.

 A presumption of fraud is imposed by law to a chattel mortgage wherein the mortgagor is allowed to retain possession of the property and to make sales therefrom in the usual course of trade. Accordingly, the mortgage given by Gill to Snider was prima facie fraudulent. The reasons are well stated in the early and leading case on this subject as follows:

"Upon what theory does the law declare the mortgage of these goods invalid? The answer is that it was given with a fraudulent intent,—not, of course, morally, but legally, fraudulent,— and that because its natural and obvious effect is to hinder and delay other creditors of the mortgagor. When respondent took his mortgage, and therein stipulated that the mortgagor might dispose of a part of the mortgaged property for his own benefit, it was an agreement in advance with the mortgagor that he would not look to nor depend upon such property for his security. The apparent effort and effect was to make it a mortgage as the public, but not as between themselves. Under such an agreement the mortgagor might dispose of the bulk of the property, in terms covered by the mortgage, and convert the proceeds to his own use; but if, while such conversion was going on, a creditor should seize any part of it, the mortgagee would stand ready with his mortgage to protect it. The mortgage could not have been intended to, nor did it, give the mortgagee any certain or abiding lien on the goods for the payment of his claim; for it distinctly provided that the goods, apparently pledged for such purpose, might be sold at the will of the mortgagor, regardless of payment made or contemplated, precisely as though there were no mortgage. This, we say, makes the mortgage presumptively fraudulent, because its natural and

legitimate effect is a fraud upon other creditors;
* * *."

Greeley v. Winsor, 1 S. D. 618, 48 N.W. 214, 215.

 In many jurisdictions the effect of such constructive fraud renders the mortgage absolutely or conclusively fraudulent. 10 Am.Jur. Chattel Mortgages, § 162, p. 821; Annotation 73 A.L.R. 236; 14 C.J.S. Chattel Mortgages § 203, p. 807. In this state such a mortgage is considered prima facie or presumptively fraudulent only "leaving in every case the suspicion which attaches to such a mortgage to be overcome and removed, if it can be, by evidence showing the entire bona fides of the parties in the transaction towards other creditors." Greeley v. Winsor, supra; Black Hills Mercantile Co. v. Gardiner, 5 S.D. 246, 58 N.W. 557; and Chambers v. Wilson, 67 S.D. 495, 294 N.W. 180. "The important question in this class of cases is, was the mortgage given to secure a bona fide indebtedness, and for the benefit of the creditors, or was the mortgage given as a mere sham to cover up the property and protect the mortgagor from the claims of his creditors?" F. Meyer Boot & Shoe Co. v. C. Shenkberg Co., 11 S.D. 620, 80 N.W. 126, 129; First National Bank of Custer City v. Calkins, 12 S.D. 411, 81 N.W. 732. The burden of proof is upon the mortgagee to rebut the presumption of fraud by showing the mortgage was, in fact, made (1) in good faith, (2) for a full or fair consideration, and (3) without intent to hinder, delay, or defraud other creditors. Hollenbeck v. Louden, 35 S.D. 320, 152 N.W. 116.

 The trial court instructed the jury in accordance with the above settled principles. Nevertheless, plaintiff contends that because there was evidence of Gill's insolvency the trail court erred in not instructing the jury to return a verdict in favor of plaintiff unless the mortgagee Snider proved by a preponderance of the evidence that the mortgage (1) was made in good faith, (2) for a proper consideration, (3) without intent to hinder, delay or defraud other creditors, and (4) that the mortgagor Gill was solvent at the time the mortgage was executed. In our opinion the trial court properly refused plaintiff's requested instructions

which declared the chattel mortgage absolutely void, in effect, if the jury found the defendant Gill to be insolvent at the time the mortgage was executed. This is an action by a single creditor to set aside an alleged fraudulent conveyance. It should not be confused with a representative action brought for the benefit of all creditors by a trustee in bankruptcy to set aside a preferential transfer under the Bankruptcy Act. See Grant v. Powers Dry Goods Co., 23 S. D. 195, 121 N.W. 95; and Pierre Banking & Trust Co. v. Winkler, 39 S. D. 454, 165 N.W. 2.

■ Under our fraudulent conveyance act a "conveyance" includes a "mortgage." SDC 23.0201. With reference to a conveyance by an insolvent it is provided: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." SDC 23.0204. The trial court was not obligated to instruct the jury under this provision because the undisputed evidence shows the mortgage in question was supported by a full and fair consideration.The entire amount of the mortgage was, in fact, loaned by Snider to Gill. The money was all expended by Gill for business purposes in the purchase of new stock, payment of accounts, and in remodeling the store. The insolvency of the mortgagor at the time of the execution of the mortgage merely constituted one of the evidentiary factors for the jury to consider, along with all the other facts and circumstances, in determining the bona fides or mala fides of the transaction.

■ Our law expressly allows a debtor to prefer one creditor over another. Pursuant to SDC 23.0103 "A debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to another." Such preferential transfers are not fraudulent conveyances unless made (1) with actual intent to hinder, delay, or defraud other creditors or (2) by an insolvent debtor without a fair consideration. There was accordingly no error committed by the trial court in the giving and refusing of its instructions to the jury.

■ During the trial plaintiff attempted to call the defendant Gill for cross-examination as an adverse party. The garnishee defendant objected on the grounds the defendant Gill was not appearing in the action and having disclaimed all interest in the property was no longer an adverse party under our statute. The court sustained the objection and plaintiff was compelled to call, and examine, Gill as his own witness.

■ In so ruling the trial court was apparently following the rule set forth in the case of Dunlap v. Thiele, 64 S.D. 150, 265 N.W. 593, 594, in which it was pointed out that our statute, now SDC 36.0208, permitting the calling of an adverse party for cross-examination was taken from Minnesota. The court went on to say: "At the time we adopted the Minnesota law, it was established by the Minnesota decisions that this statute did not authorize a plaintiff, as a matter of strict legal right, to call a defaulting defendant for cross-examination as an adverse witness." This rule has been reaffirmed and restated in recent Minnesota cases as follows: "A defendant who is in default upon any issue essential to plaintiff's cause ceases, as to that issue, to be a party adverse to the plaintiff, and upon such issue it is error to permit plaintiff to cross-examine him as an adverse party. Pursuant to the second sentence of rule 43.02, insofar as here pertinent, a party may not call another party to an action for interrogation by leading questions and for contradiction and impeachment unless the record establishes that there is an issue between them to be tried. Where a party is in default as to any issue, the essential element of adversity between the parties as a requisite for cross-examination has disappeared as to that issue." Pearson v. Bertelson, 244 Minn. 224, 69 N.W.2d 621, 626, and Alsleben v. Oliver Corporation, 254 Minn. 197, 94 N.W.2d 354. The rule we have adopted from Minnesota finds logical application in actions arising on contract for the recovery of money only, as in those cases a defaulting defendant, in effect, admits the allegations of the complaint and judgment may be entered upon proof of default alone. SDC 33.1707(3). On the other hand the rule has no application in actions

involving fraud, collusion, and the like wherein plaintiff is required to prove his cause of action notwithstanding default of the defendant. Minnesota has recognized this exception in cases involving fraud. Adams v. Farmers' State Bank, 176 Minn. 108, 222 N.W. 576.

Proceedings against a garnishee are deemed to be "an action by the plaintiff against the garnishee and defendant as parties defendant, and all provisions of law relating to proceedings in civil actions at issue, including examination of the parties, * * * shall be applicable * * *." SDC 37.2823. The statute clearly makes the main defendant in a garnishment proceeding an "adverse party" to the plaintiff. Accordingly, plaintiff should have been allowed to call Gill as an adverse party pursuant to SDC 36.0208 and to "interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by an opposing party." Although Gill disclaimed all interest in the garnisheed property he remained an "adverse party" to the alleged fraudulent conveyance. He could not divorce, or divest, himself from that status simply by defaulting, failing to appear, or by filing a disclaimer of interest in the subject matter.

Plaintiff examined Gill, at length, as his own witness. All questions interposed were apparently fully answered. No question on direct or redirect examination was objected to and no portion of the witness' testimony was excluded as evidence by the court. On oral argument counsel for plaintiff indicated the parties to the mortgage had no actual or fraudulent intent and plaintiff was relying for recovery solely on the theory of constructive or legal fraud. The record does not indicate that Gill was unfriendly, hostile, or evasive while on the witness stand and no request was made by plaintiff to interrogate the witness by leading questions as an unwilling or hostile witness pursuant to SDC 36.0208. Under the circumstances we believe the failure to allow plaintiff to examine Gill as an adverse party constituted harmless error only. Davies v. Village of Madelia, 205 Minn. 526, 287 N.W. 1, 123 A.L.R. 569; and Kamosky v. Owens-Illinois Glass Co., D.C., 89 F.Supp. 561, affirmed 3 Cir., 185 F.2d 674.

■ In the remaining assignment of error plaintiff contends the trial court unduly restricted his cross-examination of the garnishee defendant with reference to a meeting between the defendant, the garnishee defendant, and their attorneys. The meeting took place in September 1956—one year after this proceeding was commenced and sixteen months after the chattel mortgage in question was executed. The ruling falls squarely within the board discretionary power of a trial court to restrict the scope and extent of cross-examination on collateral matters and we find no abuse of that discretion reflected here.

The judgment is affirmed.

ROBERTS and RENTTO, JJ., concur.

SMITH, J., concurs in result.

BIEGELMEIER, J., dissents.

BIEGELMEIER, Judge (dissenting).

While I am in general agreement with Judge HANSON'S opinion. I cannot reach the same result and will endeavor to explain this divergence.

At common law and in the absence of a statute providing otherwise, parties to the action and interested persons, although not parties, were incompetent as witnesses, 58 Am.Jur., Witnesses, §§ 159, 170; 97 C.J.S. Witnesses § 120; nor was a man bound to furnish his adversary with evidence to be used against himself and discovery by a bill in equity supplied the means to remedy this defect. 17 Am. Jur., Discovery and Inspection, §§ 2 and 3. The general background may be found in 58 Am.Jur., Witnesses, § 169 and § 172 and is referred to in McKay v. Brink, 65 S.D. 472, 275 N.W. 72.

Some of the statutory history of Dakota Territory and this state appear in Dunlap v. Thiele, 64 S.D. 150, 265 N.W. 593 and see comments in Langford v. Issenhuth, 28 S.D. 451, 134 N.W. 889. The general disqualifications of interest or being a party, etc., have been abolished with few exceptions. SDC 36.01. Not only may such persons testify but they

may be "compelled to give evidence," at any time before trial (SDC 36.0503) and a party "may call an adverse party and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by an opposing party. Any other opposing party may contradict and impeach any such witness." SDC 36.0208. Greater latitude is allowed in cross-examination under the statute than in ordinary cross-examination. First State Bank of Wood v. Anderson, 46 S.D. 104, 191 N.W. 339. As stated in Langford v. Issenhuth, supra [28 S.D. 451, 134 N.W. 892], the Minnesota court has said "that the object of the statute was to permit a party to call his adversary at the trial without making him his own witness, * * * that the widest and freest scope is to be given the examination * * *" and "The whole case may be fully and minutely investigated."

The Minnesota court has held "Where a party is in 'default as to any issue, the essential element of adversity between the parties as a requisite for cross-examination has disappeared as to that issue." Pearson v. Bertelson, 1955, 244 Minn. 224, 69 N.W.2d 621, 626; Alsleben v. Oliver Corp., 1959, 254 Minn. 197, 94 N.W.2d 354 and cases cited. Despite consistent holdings on this point that it is error to permit cross-examination under its statute of a defendant in default, it may not be prejudicial error to permit it. Alsleben v. Oliver Corp., supra. Other courts have come to varied conclusions on the subject and their decisions may be located in the West Digest, Witnesses, [key] 276. See Schwartz Supply Co. v. Breen, La.App., 184 So. 228, where evidence of one Co. v. Breen, La.App., 184 So. 228, where evidence of one defendant on cross-examination was held inadmissible against a codefendant perhaps because of decisions under the Louisiana statute that a codefendant may not cross-examine such witness. In South Dakota, however, codefendants are entitled to such cross-examination. Dunlap v. Thiele, 64 S.D. 150, 265 N.W. 593. See also W.T. Rawleigh Co. v. Cook Tex. Civ.App., 107 S.W.2d 625, where cross-examination of a defendant was permitted even where the codefendant claimed the other defendant occupied the position of a plaintiff.

In Peterson v. Peterson, 74 Cal.App.2d 312, 168 P.2d 474, the court held in an action to quiet title where a defendant had disclaimed his interest in real property, he could not be called for cross-examination on that cause of action but could be called for cross-examination in the same action on a separate cause of action for damages. In Johnson v. St. Sure, 50 Cal.App. 735, 195 P. 947, it was held that evidence of one defendant on cross-examination was admissible against a codefendant. In Butler v. Parrocha, 186 Va. 426, 43 S.E.2d 1, 4, the statutes read:

"Sec. 3. 'If any party required by another to testify on his behalf, refused to testify, it shall be lawful for the court, * * * to dismiss the action * * *.'

"Sec. 4. 'A party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination.' "

That statute apparently had its origin in 1865. The court said:

"It is clear that the intent of the legislature was, first, to compel a litigant, if called by another party to the cause, to testify in behalf of such other party; and, second, to permit any litigant to call and cross-examine any person 'having an adverse interest' in the outcome of the litigation, whether or not a party. * * *

"Sections 3350 and 3351 were construed in Ferguson v. Daughtrey, 94 Va. 308, 315, 26 S.E. 822, 825, where it was held that 'where a party seeking to impeach a transaction for fraud calls as witnesses the parties to the transaction, which, owing to the exigencies of the case, he is obliged to do, and proves by them facts from which the law infers fraud, or which are inconsistent with good faith, and outweigh and overcome their denial of the fraud, effect must be given to the facts so proved, and the transaction annulled.'

> "The substance of this holding is that an admission of a party to the cause against his interest is substantive evidence and in the proper case may overcome positive testimony of the same party."

In a case reported by headnote only in 42 N.E.2d 853, it is stated that in a garnishment proceeding, interests of a judgment debtor continued to be adverse to the judgment creditor, and trial court should have permitted judgment creditor to call the judgment debtor as a witness for cross-examination. Nudelman v. Stern, 315 Ill.App. 215, 42 N.E.2d 853. In Adams v. Farmers' State Bank, 1928, 176 Minn. 108, 222 N.W. 576, referred to in the Alsleben opinion, supra, the court held cross-examination of a defaulted defendant in an action for fraud was proper for the reason that judgment could not be entered against the defaulted defendant without proving the cause of action alleged. In Sturgeon v. Hanson, 1932, 62 N.D. 720, 245 N.W. 481, 482, the court held cross-examination of a defendant was admissible even though he was in default stating: "It is a matter of no consequence, so far as the exercise of the statutory right (of cross-examination) is concerned, that this defendant was in default, or that during his examination it appeared he was not as reluctant to impart information and disclose the truth as he might have been if he had been disposed to resist the plaintiff's claim."

In justice to the trial judge in the case at bar, it appears his rulings followed Dunlap v. Thiele, supra. I agree that the trial court erred in denying plaintiff's request to call the defendant as an adverse witness. See Morrell Livestock Co. v. Stockman's Commission Co., 1957, 77 S.D. 114, 86 N.W.2d 533.

It being error, was the error prejudicial? In my opinion, it was prejudicial. In Larson v. Nelson, 54 S.D. 184, 223 N.W. 41 44, as to the refusal of the trial court to permit cross-examination in a will contest, this court said:

> "It is clear that a will contest is a proceeding, and respondent, being a party to the record, was subject to be called and examined as an adverse witness, and it was error to sustain the objection made."

In Bates v. Flath, 1947, 81 Ohio App. 188, 78 N.E.2d 56, 57, the court under similar statute said:"Thus the plaintiff was given a positive right, and if the admissions of the defendant in any degree contributed to prove plaintiff's case, she was entitled to such examination and its denial to her was prejudicial error." Sturgeon v. Hanson, supra. This right to call an adverse party for cross-examination and thoroughly question him was recognized in Clements v. Keith, 53 S.D. 588, 221 N.W. 675.

A party calling another party for cross-examination is in a much different position from the calling of a witness as his own as to the manner and result of such examination. Langford v. Issenhuth, supra. While Wigmore, Evidence, 3d Ed. § 897 considers the origin and present status of this difference, one phase of it is briefly stated in McCormick on Evidence, § 38, page 70, as

> "The common law rule forbidding a party to impeach his own witness is of obscure origin * * * among the reasons * * * found for the rule are, first, that the party by calling the witness to testify vouches for his trustworthiness * * *."

A party is not bound by the evidence given by a witness on cross-examination and may impeach or otherwise discredit him. See SDC 36.0208; Barker v. Coats, 41 S.D. 45, 168 N.W. 797; In re Houda's Estate, 76 S.D. 388, 79 N.W.2d 289.

Here, where plaintiff had this "right," it was denied by the trial court, and he was thus required to call defendant Gill as his own witness; the prejudice was all the more apparent when Gill was asked on his cross-examination by the garnishee if he had any intent to defraud plaintiff and he answered that he did not. How could plaintiff expect to convince the jury when the garnishee and plaintiff's own witness testified there was no intent to defraud? When, as the Supreme Court of our sister state of North Dakota has pointed out in Wellens v. Beck, N.D.1957, 84 N.W.2d 345, at page 360, the generally accepted rule is that a chattel mortgage such as is involved in this action is not presump-

tively fraudulent as we here affirm, but is void as to creditors, this court should not erect another shield in the hands of the parties to this claimed fraud. For these reasons I am unable to concur in the opinion and respectfully dissent. The error was prejudicial and the judgment should be reversed and a new trial granted.