mitted in such a way as to be criminal. I conclude, therefore, that the information is defective in that it does not designate any crime, and does not even allege that any crime was committed. As the conviction must be reversed by reason of the foregoing defects in the information, it is unnecessary to decide the other questions raised by this appeal. Judgment of conviction reversed.

Judgment reversed.

(33 Misc. Rep. 141.)

### In re SEARS' ESTATE.

(Surrogate's Court, Cattaraugus County. November, 1900.)

1. WITNESSES—ATTORNEY AND CLIENT—COMMUNICATIONS.

Code, § 835, forbids an attorney to disclose a communication or advice given in the course of employment; and section 836, as amended by Laws 1877, c. 416, and Laws 1893, c. 295, enacts that the said section 835 applies to the examination of the attorney as a witness, unless the objection is waived by the client, except that on probate of a will an attorney is competent, where he was a subscribing witness to the will. Held, that the prohibition extended to transactions passing between the testatrix and the attesting witnesses at the time of the execution of the will, in the presence and under the direction of an attorney who prepared and superintended the execution of a will to which he was not a subscribing witness.

2. WILLS—ATTESTATION—SUBSCRIBING WITNESSES—PROOF.

A will was executed 16 years before the death of the testatrix, at a time when she was possessed of ample business ability and testamentary capacity; and the terms were equitable, and she never attempted any subsequent disposition of the property. The attesting witnesses did not recollect the publication of the will, nor the request to them to sign, though they did not testify against such acts. Code Civ. Proc. § 2620, provides that, if a subscribing witness forgets the execution of a will, it may be established on proof of handwriting and such other circumstances as would be sufficient to prove the will in a civil action. Held, that in view of such facts, and of the fact that the attestation clause recited that request and publication were duly made, the will was sufficiently proved.

Proceedings on probate of will of Eliza Sears. Decree admitting the will to probate.

Goodwill & Benson, for proponent.
Ansley & Spencer, for contestants.

DAVIE, S. The testatrix died March 26, 1900, leaving her surviving one daughter and two grandsons, the children of a deceased son, as her only heirs at law and next of kin. The instrument offered for probate bears date July 25, 1884, and by its provisions the testatrix gives her entire estate to the daughter. The grandsons contest the probate on the alleged grounds of undue influence and lack of testamentary capacity, as well as upon the ground of a failure to comply with the statutory requirements in the execution of the will. The evidence quite satisfactorily shows testamentary capacity on the part of the testatrix at the date of the execution of the will; and, while it appears that the relations between the testatrix and the daughter, her sole beneficiary, were at the time of the making of the will of a close and confidential character, yet the evidence falls far short of being sufficient to defeat probate on the ground

of undue influence. The rule seems to be well settled that, to avoid a will on the ground of undue influence, it must be made to appear that it was obtained by means of influence amounting to moral coercion, destroying free agency, or by importunity which could not be resisted, so that the testator was constrained to do that which was against his actual will, but which he was unable to refuse or too weak to resist. Brick v. Brick, 66 N. Y. 144. In those cases where one member of a family obtains control of a parent, aged and infirm, by constant importunity and insidious efforts, and produces a testamentary disposition in favor of the one exercising such influence, and to the exclusion of those having equal claims, it becomes necessary for the law to extend its protection in order to prevent such improper and unjust interference. Delafield v. Parish, 25 N. Y. 95; Tyler v. Gardiner, 35 N. Y. 594. Yet the evidence fails to bring this case within the operation of the principles enunciated by the cases last cited. The will in question was executed more than 15 years before the death of the testatrix, and at a time when she possessed good business capacity. Substantial reasons are also disclosed for discrimination in favor of the daughter as against the contestants, and, all considered, it cannot be said that the will is unjust or harsh in its terms or provisions.

These considerations eliminate every question on this contest, aside from that of the formal execution of the will. On the trial the proponent called as a witness the attorney who prepared and superintended the execution of the will, and sought to establish by his evidence the details of such execution. Such evidence was objected to as being incompetent under the provisions of section 835 of the Code, and it was thereupon stipulated that such evidence be taken and retained or excluded, with the proper exception, on the final consideration of the case. The question of the admissibility of this evidence is one which now first claims attention. The section of the Code above referred to provides:

"An attorney or counselor-at-law shall not be allowed to disclose a communication, made by his client to him, or his advice given thereon, in the course of his professional employment," etc.

Section 836 of the Code, qualifying sections 833–835, as amended by chapter 416 of the Laws of 1877, was as follows:

"The last three sections apply to any examination of a person as a witness unless the provisions thereof are expressly waived * * * by the person confessing, the patient or client."

Section 836 was modified by chapter 295 of the Laws of 1893 by providing as follows:

"But nothing herein contained shall be construed to disqualify an attorney in the probate of a will heretofore executed or offered for probate or hereafter to be executed or offered for probate from becoming a witness as to its preparation and execution, in case such attorney is one of the subscribing witnesses thereto."

The amendment of section 836 above referred to was merely declarative of the law as it then stood, for the court of appeals had at that time passed upon this question in the leading case of In re Coleman's Will, 111 N. Y. 222, 19 N. E. 71. It is claimed, however,

on part of the proponent, that the transactions passing between the testatrix and the attesting witnesses at the time of the execution of the will, in the presence and under the direction of the attorney, are not excluded by the provisions of the Code cited; but it was determined in Re O'Neil (Sur.) 7 N. Y. Supp. 197, that:

"Practically, all that a man may say to an attorney who is employed by him to draw his will and to superintend its execution, upon that subject, and all he may say to anybody else in the attorney's presence and hearing at the time, cannot be lawfully disclosed by the attorney. The only exception is when the attorney is a subscribing witness."

See, also, In re Lamb (Sur.) 18 N. Y. Supp. 173.
In the case last cited it was said that:

"The language of section 835 of the Code, strictly construed, does not admit of a lawyer testifying to the facts attending the execution of a will drawn by him for his client."

A careful examination of the sections of the Code referred to, and the decisions relating to the same, leads to the conclusion that the attorney who prepared and superintended the execution of the will in controversy is not a competent witness to testify to the same. Consequently the will must be either admitted to or denied probate upon the other evidence in the case.

At the end of the will is an attestation clause, full and complete in every particular, reciting the fact that:

"The above-written instrument was subscribed by the said Eliza Sears in our presence, and acknowledged by her to each of us, and she at the same time declared the above instrument, so subscribed, to be her last will and testament; and we, at her request, have signed our names as witnesses hereto, in her presence, and in the presence of each other, and written opposite our names our respective places of residence."

This attestation clause is signed by both of the attesting witnesses, both of whom are called and examined as witnesses on behalf of the proponent in this proceeding, and testify that they remember the occurrence of the execution of the will, and that they saw the testatrix sign the same, and that they signed as witnesses, in her presence and in the presence of each other; that the signatures at the end of the attestation clause are their respective signatures. But they each testify that they have no recollection at the present time of any declaration on the part of the testatrix that the instrument so subscribed by her was her will, nor do they either recollect that she requested them to sign as attesting witnesses. These witnesses do not assume to testify, as a matter of present recollection, that the testatrix did not in fact declare the instrument subscribed by her to be her will, or that she did not request them to sign as witnesses; but their evidence discloses a total want of present recollection in regard to these two subjects. The attesting witness, Austin Holt, testified, among other things, as follows:

"Q. Do you remember at one time of witnessing her will? A. I do. Q. Do you remember her signing this paper? [Will shown witness.] Q. Is that Mrs. Sears' signature? A. The signature to the will is Mrs. Sears'. Q. Do you remember who requested you to witness the will? A. It is my recollection that you [Mr. Benson, the attorney who prepared the will] did. Q. Do you remember who went up with you? A. I haven't a clear recollection of

that. Don't know whether I went up alone or with Mr. Dow [the other attesting witness]. Q. Do you remember at the time when Mrs. Sears signed this instrument that Mr. Dow and yourself were present? A. I do. Q. Who signed the will first? A. Mr. Dow, as witness. Q. Did Mrs. Sears sign it first? A. I think you [Mr. Benson] called our attention to Mrs. Sears signing the will as we stood there."

The other attesting witness testified as follows:

"[Will shown witness.] Q. Do you remember the execution of that paper? A. Yes, sir. Q. Were you present when the will was signed by Eliza Sears? A. Yes, sir. Q. Where was it signed? A. At Mr. Benson's office, over Adams' store. Q. Was Mr. Austin Holt present? A. I think we went up together, and Mrs. Sears was there. Q. Do you remember Mr. Holt signing in your presence? A. Yes, sir. Q. Were you and Mr. Holt requested to sign this instrument as witnesses to her will? A. Yes, sir; and my recollection is that she signed it in our presence. Q. Did you sign it in her presence? · A. Yes, sir. Q. What did she say it was? A. I was in the bank, and was called up there to witness her will. This is my signature. I don't know that I saw the forepart of the paper. I knew it was a will by the form of it. Q. Do you remember who requested you to come and sign the will? A. It is my impression that you [Mr. Benson] did, but Mrs. Sears might have done it."

On his cross-examination this witness further testified as follows:

"Q. When you went up into Mr. Benson's office, who was present? A. My recollection is that Mr. Benson, Mrs. Sears, Mr. Holt, and myself were the only ones. Q. Do you swear positively that there were no others in the room? A. I could not do that. Q. Will you swear that her daughter Albina was not there? A. Don't think she was. Can't swear to that. Q. Did Mr. Benson have more than one room there? A. Yes, sir. Q. Were you in both of those rooms? A. I could not swear as to that. Q. Did Mr. Holt leave when you did? A. ·I could not swear as to that. I signed the will first. I was taken from my office in the bank, and I usually got back to business as quick as I could. Q. Did you wait until Mr. Holt had signed? A. I could not swear as to that. Q. Do you remember of anything that the old lady, Mrs. Sears, said at that time? A. No, sir. Q. All you did was to go in there and see her sign, and sign your name? A. That's about all the recollection I have about it after I signed it. Q. Did you say that you did not know whether it was Mr. Benson or Mrs. Sears that came after you? A. I believe I did."

On his redirect examination this witness further testified that he read over the attestation clause at the time of the signing of the will, and further testified as follows:

"Q. You may have had some talk with Mrs. Sears there in the office? A. I may have had, but I have no recollection of any. Q. What is your present recollection,—whether you did or did not have any conversation with Mrs. Sears at that time? A. As regards the will, I have no recollection of any."

I refer to this evidence somewhat in detail for the purpose of showing that neither of these witnesses has assumed to testify that the fact of publication and request to them to sign did not take place. The only criticism that can be passed upon their evidence is that they do not at the present time recollect these facts. In other words, there is a failure of recollection upon the part of the attesting witnesses in these particulars. It is not essential to the due publication of the will that the testator shall declare in express terms, in the presence of the subscribing witnesses, that the instrument is his last will. It is sufficient if he in some way makes known to them, by acts or conduct, if not by words, that it is intended and understood by him to be his will. Where, therefore, a testator

subscribes a will in the presence of the witnesses, and by his conduct made known its nature, and requested their attestation, held, that there was a substantial compliance with the statute, sufficient to entitle the will to probate. Lane v. Lane, 95 N. Y. 494. The Code provides that if "a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action." Code Civ. Proc. § 2620. In this case the proof of signatures of the testatrix and of the attesting witnesses is complete, and the recitals in the attestation clause, if true, show a full compliance with the statutory requirements in every particular. In an early case (Nelson v. McGiffert, 3 Barb. Ch. 158) the chancellor held that an attestation clause, after a considerable lapse of time, when it may reasonably be supposed that the particular circumstances attending the execution of the will have escaped the recollection of the attesting witnesses, is a circumstance from which the court or a jury may infer that the requisites of the statute were complied with. This rule has been substantially adopted in subsequent decisions. Jessop, Sur. Prac. 386; In re Bernsee's Will, 141 N. Y. 389, 36 N. E. 314; In re Pepoon's Will, 91 N. Y. 255; In re Cottrell's Will, 95 N. Y. 329; Brown v. Clark, 77 N. Y. 369.

In the following cases a full attestation clause was instrumental in sustaining the will where the memory of the witnesses was defective: In re Graham's Will (Sup.) 9 N. Y. Supp. 122; In re Hunt's Will, 110 N. Y. 278, 18 N. E. 106; In re Rounds' Will, 7 N. Y. St. Rep. 730; In re Townley's Will, 1 Con. Sur. 400; In re Wilcox's Will (Sup.) 14 N. Y. Supp. 109; In re Lantry's Will (Sup.) 5 N. Y. Supp. 501; In re Frey, 2 Con. Sur. 70.

In view of all the circumstances attending the execution of the will; the long lapse of time intervening since its execution; the business ability and capacity of the testatrix at the time; the fact that the will was prepared and executed under the superintendence of an attorney; the fact that the terms of the will appear to be reasonable and equitable, and that it does not appear that the testatrix has ever made any subsequent will, or in any manner attempted to modify the terms or provisions of the will in question,—all lead to the conclusion that this will should not be defeated in consequence of the mere lack of recollection on the part of the attesting witnesses as to the fact of publication and request, especially in view of the fact that the attestation clause, signed by these witnesses at the time the transaction occurred, recites the fact that such publication and request were properly made.

The will should be admitted to probate, and the objections filed to probate disallowed. A decree will be entered accordingly. Decreed accordingly.