HAUER, et al., Appellants, v. HAUER, Respondent.

(186 N. W. 566.)

(File No. 4879.   Opinion filed January 30, 1922.)

1.  Wills—Execution Of, Non-reading of Entire Will By Subscribing Witness—Former Opinion, Dissenting View of Facts Adopted on Rehearing.

Upon rehearing, Court finds that the sentence from the majority opinion on former decision (44 S. D. 375) quoted in dissenting opinion, did not correctly state the facts, and the statement of facts found in dissenting opinion, to the effect that subscribing witness M never read the whole will to executrix (who was unable to read English), and only read part thereof and advised decedent as to what would be the effect of certain disposing provisions read by him, and did not read the attestation clause, is adopted.

2.  Same—Signed Certificate of Attestation in Due Form, Presumption Therefrom of Compliance With Statutory Requisites—

Affirmative Memory of Subscribing Witness, Immateriality Of—Presumption, How Overcome.

Where a duly signed attestation clause to a will was in form required by law, and testatrix signed the instrument, there arises a strong presumption that each and all of statutory requisites were complied with; such presumption does not need support of affirmative memory of either subscribing witness; and in order to defeat the will, such presumption must be overcome by clear and satisfactory evidence.

3.  Same—Will Prepared by Qualified Attorney, Effect Re Presumption Favoring Will Where Witnesses' Memory Defective.

As held in Ross v. Taylor, 39 S. D. 608, the fact that the execution and witnessing of a will was done under direction and charge of a well qualified attorney, is a material element in considering the effect of the lack of memory of subscribing witnesses concerning the form and contents of the attestation. So held, where all that could be said of the evidence given by M, a subscribing witness, is that he did not recall all facts concerning publication and attestation of the will.

4.  Same—Witness, Whether Attestation Clause Read By, Evidence Considered Sufficient.

Where probate of a will was sought to be set aside on the ground that testimony of the attesting witnesses failed to show that either one of them read the contents of the attestation clause, held, that testimony of witness M, substantially showing that while he "just glanced it over and found what it contained," and explained its contents to executrix, that he began to read it where it began to divide the property, etc., that after explaining to executrix in substance what he had read, she said in response to his question as to whether "it was the way she wanted it," "It was;" that as he recollected he thought that was all he read at the time, but "could not say as to that," that "I may have but I could not say"—was sufficient to establish that the will was in due form and that testatrix knew its contents.

Whiting, J., dissenting.

Anderson, J., not sitting.

Appeal from Circuit Court, Grant County.    Hon. FRANK ANDERSON, Judge.

On rehearing.  Former decision adhered to.

*Thad. L. Fuller, J. M. Huff,* and *Howard G. Fuller,* for Appellants.

*Geo. S. Rix,* and *Martens & Goldsmith,* for Respondent.

(4)  To point four of the opinion, Appellant cited:  Hill v. Davis, L. R. A. (N. S.) 1918B, 687.

[1] GATES, P. J. This cause is before us on rehearing granted. The former opinion and dissenting opinion are found in 44 S. D. 375, 184 N. W. 1. The sentence from the majority opinion quoted in the dissenting opinion did not correctly state the facts. The statement of facts in regard thereto found in the dissenting opinion is correct.

[2] Three principal questions are presented for consideration. The first relates to the due execution, publication, and attestation of the will. The will in question was signed by testatrix in July, 1909. The trial in circuit court occurred in April, 1920, nearly 11 years thereafter. Naturally the subscribing witnesses did not remember all of the details attending the execution, publication, and attestation of the will, but the certificate of attestation was in the form required by law. In Ross v. Taylor, 39 S. D. 608, 165 N. W. 1079, we said:

"When (as in this case) it is proven that the testator signed the instrument, and that the persons whose names appear as subscribing witnesses signed the usual certificate of attestation setting forth in detail a full compliance with the several statutory provisions in relation to execution, including the fact of publication to such witnesses, there arises a strong presumption that every one of such statutory requisites were complied with. Such presumption does not need the support of the affirmative memory of either subscribing witness; and, in order to defeat the will, such presumption must be overcome by clear and satisfactory evidence. In re Grant's Will, 149 Wis. 330, 135 N. W. 833; In re Sears' Estate, 33 Misc. Rep. 141, 68 N. Y. Supp. 363; Mundy v. Mundy, 15 N. J. Eq. 290."

In 28 R. C. L. 372, the text says, upon the authority of cases from Illinois, New Jersey, Pennsylvania, and Vermont:

"One effect of a formal attestation clause is to raise a presumption that the will was duly executed, although the witnesses are unable to recall the facts."

In 28 R. C. L. 369, we also find the following:

"A properly executed attestation clause is held to furnish prima facie proof of all facts essential to due execution to which attesting witnesses could depose, if present, including the authenticity of the testator's signature, * * * also his volition in signing and his mental capacity and understanding of his act."

[3]   There is another point in this case which tends to support the will that was not adverted to in the former opinions. This will was prepared, executed, and published under the direction of a well-qualified attorney, Thos. L. Bouck, of Milbank, who was deceased at the time of the trial and who was the circuit judge of the Fifth judicial circuit of this state at the time of his death.   Upon this point we said in Ross v. Taylor, supra:

"Our attention has been called to numerous cases where wills have been admitted to probate regardless of the fact that one or more of the subscribing witnesses have sworn to facts impeaching the certificate of attestation.   But an examination of such cases reveals that in every one there were some facts or circumstances tending to impeach the memory or veracity of such witness or witnesses.   In some cases the subscribing witnesses were very old when called to testify.   In others the executing and witnessing of the writing was under the direction and charge of some well-qualified attorney, or the testator was himself a party who would be presumed to know, and therefore to comply with, the statutory requirements. * * * Had this subscribing witness admitted that he was in the slightest doubt in relation to the lack of publication by Mrs. Taylor, so that we had anything from which to infer that he had forgotten what actually occurred, we would affirm the judgment of the circuit court."

The testimony of the subscribing witness McKenna does not tend to impeach the certificate of attestation.   The most that can be said of the evidence given by Mittelsteadt, the other subscribing witness, is that he did not recall all of the facts in regard to the publication and attestation of the will.   After going to the settled record and giving the evidence most careful scrutiny, and considering the case from the legal viewpoints above set forth, we are of the opinion that the prima facie proof, arising from the certificate of attestation, that the will was duly executed, published, and attested, has not been overcome.

[4]   Our colleague asserts:

"There is not one word of testimony going to show that either one of the subscribing witnesses ever read the contents of the attestation clause."

Such testimony was not necessary.   It was incumbent upon contestants to prove the negative.   But our colleague (referring

to the testimony of Mittelsteadt) further says, "And there is clear evidence that one did not."

The evidence of Middelsteadt is as follows (the italics are ours) : .

"He (Mr. Bouck) said there was a will being made for Mrs. Hauer and for me to explain the contents to her. * * *

"Q. You read the paper over to some extent? A. Well I just glanced it over and found what it contained and explained its contents to Mrs. Hauer.

"Q. Whereabouts in the paper do you recollect that you began to read? A. Where it started to divide the property—that is, I glanced it over carelessly, of course.

"Q. And about where the children were named. A. Yes, sir.

"Q. After that part of it, did you read any more except the part where it disposed of the property? A. Yes; except where it disposes of the property.

"Q. That is all you remember reading of it? A. Yes, sir. * * *

"Q. You say she could not speak English? A. No, sir; she could use a very few words.

"Q. After you had told her what you said, and she had used these words, 'it was,' in reply to your question if that was the way she wanted it, then you say she said it was? A. Yes, sir.

"Q. And that is all you remember she said during the time she was there? A. That is all; yes, sir.

"Q. This paper, Mr. Middlesteadt, consisted of two sheets and the parts that you testify that you read and explained to her is on the front page? A. Yes, sir.

"Q. *Is that all you read at that time, as you recollect? A. I think it was—still I could not say as to that.*

"Q. You don't recollect reading anything on this page except—you did sign your name? A. *Yes; that is as near as I can remember. I may have, but I could not say.*

"Q. Anyway, you do recollect that all you explained to her was on this front page, now about the division of the property? A. Now, it is taxing my memory a little strong. It is the instrument; I read that over in a way and explained the contents to Mrs. Hauer, which I tried to do right. * * *

"Q. *You have told us all the conversation you recollect that you had?* A. *As near as I can; yes, sir.*"

To our minds this testimony does not clearly show that the attestation clause was not read by Mittlesteadt.

The other questions urged on rehearing, as upon the original appeal, relate to the mental competency of testatrix and the claim that she was unduly influenced. We are unable to conclude that the clear preponderance of the evidence is contrary to the findings of the trial court upon these issues.

The conclusion arrived at in the former majority opinion is therefore adhered to, and the judgment and order denying new trial are affirmed.

ANDERSON, J., not sitting.

WHITING, J., (dissenting). I have read with interest the majority opinion, and notice that it is based on the law announced in the Taylor Case, cited in my dissent to the previous opinion herein. The majority state that they have gone to the settled record and given the evidence most careful scrutiny; I have also done this, and yet, while I accept in full the rules of law quoted from the Taylor Case, I cannot agree with the conclusion reached by my colleagues. I appreciate fully that there is one matter that distinguishes this case from the Taylor Case—the will now before us was executed in the presence of an able and trustworthy attorney; and if, consistent with the evidence herein, it were possible to conclude that testatrix published this will to the witness McKenna, I should be inclined to hold with my colleagues, and this even though the evidence clearly shows that Mrs. Hauer never asked either witness to be a witness to her will.

I particularly call atention to the fact that one of our holdings in the Taylor Case was:

"That, when an attestation clause is not read by or to a subscribing witness, the recitations in such clause are without weight."

There is not one word of testimony going to show that either one of the subscribing witnesses ever read the contents of the attestation clause; there is clear evidence that one did not; and, from the whole evidence, one can but infer that the other witness did not read it. As we said in the Taylor Case, a will must be executed in accordance with statutory requirements or it is entirely void.

"There must be some declaration by the testator that the instrument is his will, which declaration must be made to each of the witnesses, though the declaration need not be by words, but can be by any act or sign by which such communication can fairly be made. * * * The burden of proving due execution of the will is on the proponent."

Mittelsteadt, when testifying as to the parts of the will he read, while he says he may have read the second page (on which is found the attestation clause), very clearly testifies that he thinks he did not. Mitelsteadt swears that *all that was said by testatrix* while he was present was that the leaving out of the older children from the benefits of the will was as she wanted it. One will look in vain through this whole testimony to find any evidence that testatrix ever said another word while either of the witnesses was in her presence. There is not a word in McKenna's testimony to show that testatrix knew that it was a will she was executing. He does not recollect any conversation with Mrs. Hauer. Taking all the testimony of the two subscribing witnesses as true, there is absolutely nothing to show that information was conveyed to the testatrix that this paper was a will, absolutely nothing to show that she knew that it was a will. Suppose the witness did read over the attestation clause. Even then, how could the statement in such clause, to the effect that testatrix published the instrument as her will, stand in the face of the testimony that shows beyond question that she absolutely *could not* and *did not* publish this paper to the witness McKenna as her will? She could not do it through word of mouth, as she could not speak English. There is no pretense on the part of any one that, either by sign or in any manner, she gave McKenna to understand that she knew the nature of the instrument that she had executed.

No matter what Mrs. Hauer may have wished to do, no matter how fair her wishes were, the only authority for her to make a will is that given by statute; and, if she failed to conform to such statute, it should be left to the law of succession to divide her property.