KENOBBIE, Respondent, v. KRAUSE, et al, Appellants

(295 N. W. 646.)

(File No. 8363.   Opinion filed January 6, 1941.)

**A. C. Miller,** of Kennebec, for Appellant.

**M. Q. Sharpe,** of Kennebec, for Respondent.

SMITH, P.J.   In this companion case to Mary Kenobbie v. Hattie Krause et al., 67 S. D. 331, 292 N. W. 873, the principal question presented is whether a clear preponderance of the evidence is against the finding of the learned trial

court to the effect that a deed to the property involved herein was never in fact delivered by Ernest Krause to the defendant, Emma Krause.

The controversy involves residence property situated in Reliance, South Dakota. Plaintiff asserts title to an undivided one-third interest through succession as an heir of one Ernest Krause, and the defendant, Emma Krause, deraigns her title to the whole property through grant from Ernest Krause.

The record discloses that in August, 1927, the said Ernest Krause was the owner of several parcels of real property in and about Reliance, South Dakota, and of certain personal property. Plaintiff and one Hattie Krause are the only children of Ernest Krause and Emma Krause. On the evening of August 8, 1927, being somewhat concerned over his health, Krause called a neighbor, a justice of the peace, to his home to act as a scrivener. The work was done in the presence of defendant and Hattie Krause, but plaintiff had no knowledge thereof. During that evening several conveyances of real property, including the deed in question, and a bill of sale to personal property, were prepared and executed by Ernest Krause. As a result of the conversation which took place during the preparation of these instruments, there was noted upon each deed "This Warranty Deed good only after the Death of Ernest Krause," and on the bill of sale it was noted "This Bill of Sale good only after the Death of Ernest Krause." Before the deed in question was executed, Krause indicated to the scrivener that he did not want the above-quoted provision upon the deed to his wife, and the scrivener thereupon obliterated that notation. A conflict appears in the testimony as to what was done with the deed to Emma Krause after it was executed. We quote from the testimony.

Upon direct examination the scrivener testified: "I put them all together, if I remember right there was five altogether. I put them all together and put a rubber band on them and handed them to Mr. Krause. * * * He said, 'Here, Mother,' he says, 'You take care of them.' And he handed them to Mrs. Krause. That is the last I knew of

them. \* \* \* I wouldn't exactly state. I believe she went to the safe with them." The instruments thus described included the deed to Emma Krause. On cross-examination, however, this same witness in speaking of the deed to Emma Krause said, "He said, 'Here Mother, that is yours.' He delivered it right there."

It was stipulated that Hattie Krause would testify that she was present at the time of the execution of the above-described instruments, "and that following the final execution of the instrument by the Justice of the Peace, Mr. Karasek put a rubber band around the instruments, including the deed, Exhibit 'D', and handed them to Ernest Krause, who in turn, handed the entire bundle of instruments to Emma Krause, the defendant in this case, with the words, 'Here are the deeds, you may put them in the safe.' That at the time the bundle of papers were so handed to her she laid them on the table in the same room, and that during the same evening and before they retired, however, the deceased person did specifically refer to the deed, \* \* \* and handed it to the defendant Emma Krause, with the words in substance, stating, 'Here is your deed'."

The County Judge testified that after the death of Ernest Krause, which occurred on June 19, 1936, Emma Krause, the defendant, in company with Mary Kenobbie, the plaintiff, and her husband and Hattie Krause, came to his office. Of what occurred while they were there, the County Judge had this to say: "And then it was Hattie asked me if I couldn't tell them something in a general way about the law. And I said, 'Well, I probably can.' And I asked them then what the nature of the property was and how it had been handled and what the situation is. And she told me that Mr. Krause, sometime in his lifetime, had executed deeds to—naming who the persons were. And I asked them, 'When were the deeds discovered or when did you know of these deeds?' Well, sometime after the death of Mr. Krause. And I says before—I says to them, 'Before his death were these deeds delivered to them?' And they replied, 'No.' 'And when did you first know of the deeds?' And they told me, shortly after the death. I said, 'Where

did you find them?' 'Found them in the safe.' was the reply in reference to Ernest Krause. 'Well, of course,' I said to them, 'The general proposition of law is this is a gift in anticipation of death, and there must be a delivery.' I indicated how, taking three pieces of paper that were lying there on the table, as Mrs. Kenobbie here has testified. I asked the question, whether it had been done in this manner. She replied, 'No'."

The plaintiff took the stand in her own behalf and in reference to the occurrences in the office of Mr. Wederath, the County Judge, testified as follows: "And Hattie said to Mr. Wederath, 'Is them deeds any good?' And Mr. Wederath says, 'What deeds?' She said, 'The ones Papa left.' * * * He said, 'How was they handled? Were they personally delivered to you?' And he got up and he got three pieces of paper. He said, 'Did Ernest give you this deed, personally deliver it to you?' And she said, 'No'. He walked over to Ma and he said, 'Mrs. Krause, did Ernest personally deliver this deed to you?' And she said 'No'. He stepped back to me and he said, 'Mrs. Kenobbie,' he said, 'Did Ernest deliver that deed personally to you?' And I said, 'No'. And he said, 'Where has these deeds been kept?' And Ma spoke up and said he kept them in the safe—that Pa kept them in the safe."

Plaintiff's husband took the stand in her behalf and his testimony with reference to the conversation in the County Judge's office was substantially identical with the testimony of the plaintiff.

Neither defendant Emma Krause nor Hattie Krause denied or explained the occurrences as testified to by the County Judge, the plaintiff and her husband.

The record also discloses that several neighbors of the defendant testified to certain declarations made by the deceased after the date of execution of the above-described instruments. For instance, one of these witnesses testified that "They (referring to the defendant and Hattie Krause) have their deeds."

The deeds were executed at the farm home of Mr. and Mrs. Krause. Afterwards they moved into the property in

question in Reliance, where they lived together for several years before the death of Ernest Krause. The furnishings of the home included a safe to which both Mr. and Mrs. Krause had access. After the death of Mr. Krause all of the above-described conveyances, including the deed in question, were found in the safe wrapped in a single bundle, surrounded by a rubber band. The trial court found that the deed was not delivered.

■■ It is the function of this court to determine whether the clear preponderance of the evidence is against a finding of a trial court. Randall et al. v. Burk Township et al., 4 S. D. 337, 57 N. W. 4; Farwell et al. v. Sturgis Water Company, 10 S. D. 421, 73 N. W. 916. "It is not the function of this court to place itself in the position of the trial court to determine the credibility of witnesses and the weight to be attached to their testimony and to exercise independent judgment as to whether it would have made the same or similar fact determination." Houck v. Hult et al., 63 S. D. 290, 258 N. W. 142, 144. "* * * where it appears that the credibility of witnesses entered into a finding of the trial court as a controlling factor, only the most convincing circumstances would justify this court in reversing the same." Churchill & Alden Company v. Ramsey et ux., 50 S. D. 73, 208 N. W. 406, 407; Spackman v. Gross, 25 S. D. 244, 126 N. W. 389; Township of Blooming Valley v. Bronson, 29 S. D. 41, 135 N. W. 678; Gingles et al. v. Savings Bank of Hartford et al., 33 S. D. 351, 146 N. W. 596; Watt v. Aylward et al., 34 S. D. 228, 147 N. W. 978; Meloy v. Kell et al., 53 S. D. 388, 220 N. W. 863.

■ Counsel for appellant stoutly and most earnestly contends that the requisite preponderance against the finding of the learned trial court arises because the testimony favorable to delivery is corroborated by the unquestioned fact that the grantor did cause the sentence "This Warranty Deed good only after the Death of Ernest Krause," to be expunged from the face of this particular deed. The moving force of this argument is fully appreciated. That the grantor intended to deliver the deed during his lifetime at the time he was directing its preparation may not be doubted. How-

ever, notwithstanding the fact that such an intention is established, it remained for the trier of fact to determine from conflicting testimony and from all of the evidence whether that intention was actually carried out. This conflict included the undenied and unexplained admission of Emma Krause that the deed was not delivered. Manifestly, credibility of witnesses must have been determinative with the trial court, and therefore we are not warranted in disturbing its finding.

Other matters urged have been carefully considered but are not deemed worthy of discussion.

The judgment and order of the learned trial court are affirmed.

All the Judges concur.