In re KENNEDY'S ESTATE

SWENSON, Appellant, v. KENNEDY, Respondent

(23 N. W.2d 797.)

(File No. 8806. Opinion filed July 15, 1946.)

Rehearing Denied September 9, 1946.

**Stordahl & May,** of Sioux Falls, for Appellant.
**Doyle & Mahoney,** of Sioux Falls, for Respondent.

SMITH, J.   That the purported will of Kathryn A. Kennedy had not been published as provided by law, was the single issue raised by appellant by her objection to the probate thereof.   The county court sustained the will.   Contestant appealed to the circuit court where the matter was heard de novo.   The findings, conclusions and judgment were adverse to the contestant, and she has appealed to this court.

It is provided by SDC 56.0210:

"Every will, other than a nuncupative will, must be in writing, and every will, other than an olographic will and a nuncupative will, must be executed and attested as follows:

"(1)   It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto;

"(2)   The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them to have been made by him or by his authority;

"(3)   The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will;

"(4)   There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will, at the testator's request and in his presence;

"(5)   A witness to a written will must write, with his name, his place of residence; and a person who subscribes the testator's name, by his direction, must write his own name as a witness to the will.   A violation of this subdivision does not affect the validity of the will."

In Ross v. Taylor, 39 S. D. 608, 165 N. W. 1079, it was written: "Where publication or declaration by the testator that the 'instrument is his will' is required by statute, there must be some declaration by the testator that the instrument is his will, which declaration must be made to

each of the witnesses, though the declaration need not be by word, but can be by any act or sign by which such communication can fairly be made."

In Kittleson's Estate v. Kittleson, 42 S. D. 126, 173 N. W. 161, 162, the rule was reiterated in words as follows: "The statute specifically requires a declaration by the testator to the subscribing witnesses, in some form, either in language or by signs or other means, that the instrument he has executed is his will. In the absence of such declaration, a direct request that the witness sign the instrument attesting its execution would be insufficient under the statute."

Counsel who prepared the will at the request of testatrix was not present at its execution. He had advised testatrix with reference to the formalities essential to its execution. At the time in question one Rose Clayton, a colored maid, was cleaning the apartment of the testatrix. This witness testified, "Well, I was working there, cleaning the apartment and Mrs. Kennedy asked me if I would sign. She had to have two witnesses to the will, very important papers. * * * She asked me if I would be one of the witnesses * * * and then this Mr. C. L. Barnes was called in * * *". C. L. Barnes, a soldier, lived in the apartment building and was called in as he was passing the door of Mrs. Kennedy's apartment. The instrument was then lying on a table. According to the testimony of Mrs. Clayton, after C. L. Barnes was introduced, the testatrix asked, "* * * him if he would sign the paper and it was a very important will. She said she had to have two witnesses * * *". In answer to the question, "You may state what Mrs. Kennedy said to you and to Mr. Barnes that Exhibit 2 was", Mrs. Clayton testified, "It was an important will paper. That is all she said to me and asked me if I would be a witness." On cross-examination Mrs. Clayton testified, "She asked me—she laid it on the table and she asked me if I would sign this important will paper —she had to have two witnesses and if I would be one." And further, "She asked him if he would be a witness and sign this will" and further, "I can't give you the exact words". Thereafter Mrs. Kennedy signed the

instrument in the presence of Mrs. Clayton and Mr. Barnes and they in turn signed as witnesses. The attestation clause was not read by Mrs. Clayton, nor was it read to her and Mr. Barnes by the testatrix. Whether Mr. Barnes read the attestation clause is not revealed by the record.

Mr. Barnes was killed in action, and therefore all of the testimony with reference to the execution of the will came from Mrs. Clayton. Her testimony contains inconsistent statements, and the contestant produced a statement in Mrs. Clayton's handwriting, reading in part as follows, "* * * she said she had and important paper for me to sign. * * * At know time before or after did she tell me what kind of a paper I had signed. * * * She did not talk to me or to the soldier while we were together as to what kind of paper we had signed." In explanation of this written statement Mrs. Clayton testified that she was mistaken and should have said that Mrs. Kennedy asked them to sign an important will paper.

The county court and the trial court found that the will had been published and declared to the witnesses. The contestant asserts that the evidence is insufficient to support that finding.

■ The evidence of Mrs. Clayton, if believed, establishes that the testatrix had an instrument on the table around which she and the two witnesses were standing; that she said to the witness Barnes, "Will you sign this important will paper? I have to have two witnesses"; and that thereupon the testatrix signed the instrument and the signatures of the witnesses were added. We are of the opinion that the statements of the testatrix in connection with her conduct constituted an unequivocal declaration to the witnesses that the instrument was her will. She told them that the instrument was an important will paper. She said, "I have to have two witnesses"; and then she proceeded to execute the will in their presence.

■ To determine the credibility of Mrs. Clayton was the function of the trial court. Houck v. Hult, 63 S. D.

290, 258 N. W. 142; Kenobbie v. Krause, 67 S. D. 574, 295 N. W. 646.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

All the Judges concur.

MUNDT, Circuit Judge, sitting for POLLEY, J.