IN RE VACLAV F. HOUDA ESTATE

(79 N.W.2d 289)

(File No. 9576. Opinion filed November 9, 1956)

**Morgan & Fuller,** Mitchell, **Emmett Glanzer,** Kimball, for Contestants and Appellants.

**Donald J. Porter,** Chamberlain, for Proponents and Respondents.

**Brown & Lindley,** Chamberlain, for Executor.

HANSON, J. An instrument purporting to be the last will and testament of Vaclav F. Houda, deceased, was presented for probate to the Brule county court. It was contested upon the ground it was not executed in the manner provided by law. The county court denied probate. On appeal and after trial de novo the circuit court entered judgment admitting the will to probate. The contestants appeal.

The testator came to Kimball, South Dakota, in 1915 and resided there until his death on February 22, 1954. During most of this period he maintained a small one-room office located on the second floor of the Kimball bank building. In addition to writing insurance, he loaned money, prepared income tax returns, and managed his own property interests. He left an estate amounting to approximately $60,000.

Vaclav died a widower at the age of 74. Two sons, Fred and Eugene Houda, the contestants herein, survive him. Both sons have been estranged from their father for

many years and the contested will left them only token amounts. They were similarly disinherited by their father in prior wills executed in 1938 and 1947.

■ The beneficiaries and proponents of the will are a sister and nieces of decedent. Some are residents of Chechoslovakia. All were represented by the same attorney at the trial. His authority to appear on behalf of the foreign heirs was challenged by the contestants. Our statute allows an attorney "to produce or prove by his oath or otherwise the authority under which he appears" for an adverse party. SDC 32.1203. The trial court is thereby vested with a discretion as to the amount and nature of such proof. No abuse of that discretion was shown.

■ At the trial the proponents produced the will dated November 17, 1949. It was found in testator's safe deposit box. In all respects it is fair and regular on its face. The evidence further shows it to contain the admittedly genuine signatures of testator and the two subscribing witnesses, James Skluzak and Joseph Chihak, together with a full attestation clause reciting the due execution of the will. By such proof the proponents established a prima facie case. A strong presumption arises therefrom that the will was duly and properly executed in accordance with all the formal essentials required by law. Such presumption is not dependent upon the affirmative memory of either subscribing witness to give it vitality. In order to defeat probate of the will the presumption must be overcome by clear and satisfactory evidence. In re Taylor's Estate, 39 S.D. 608, 165 N.W. 1079; Hauer v. Hauer, 45 S.D. 103, 186 N.W. 566; In re Rowlands' Estate, 70 S.D. 419, 18 N.W.2d 290; In re Ryan's Estate, 74 S.D. 359, 53 N.W.2d 11; 76 A.L.R. 617. The presumption of due execution of the will thus arising is actually an inference of fact having evidential weight. As this court has characterized it:

> "Such proof, strictly speaking, gives rise to an inference of fact that the will was duly executed and has probative force." In re Rowlands' Estate, supra [70 S.D. 419, 18 N.W.2d 292].

■■ The majority of courts likewise view the presumption of due execution as an inference of "fact". As

such, its force is not spent upon the introduction of contrary evidence. It remains operative throughout the trial and may be weighed by the trier of fact against opposing evidence. See Annotation, 40 A.L.R.2d, 1223. Of course, a contrary rule applies to presumptions of law. They have no evidentiary weight and disappear from consideration when opposing evidence is introduced. A presumption of law cannot be placed on the scale to be weighed as evidence. Peters v. Lohr, 24 S.D. 605, 124 N.W. 853; Honrath v. New York Life Ins. Co., 65 S.D. 480, 275 N.W. 258, 112 A.L.R. 1272; Mc-Kiver v. Theo. Hamm Brewing Co., 67 S.D. 613, 297 N.W. 445; Headlee v. New York Life Ins. Co., 69 S.D. 499, 12 N.W.2d 313.

The only evidence tending to overcome the presumption of due execution comes from the lips of the subscribing witnesses. Both testified they could not remember seeing the testator sign the will in their presence and that neither saw his signature thereon. The essential question presented, therefore, is whether or not the facts support the trial court's finding that the testator subscribed the will in their presence.

At the time the will was executed the witness, James Skluzak, was 45 years of age. He was a farmer near Kimball and had known the testator for over 25 years. The witness, Joseph Chihak, was 62 years of age at the time. He was a retired farmer living in Kimball and had known the testator for over 30 years. Their testimony was in agreement with reference to the following particulars:

(1) The will was executed in the testator's office sometime during the afternoon of November 17, 1949;

(2) The testator requested them to sign his will as witnesses; and

(3) They both subscribed their names to the will in the presence of the testator and in the presence of each other.

As to the testator's signing and signature Skluzak's statement was:

"I would not swear his signature was there showing when I signed it (the will) and I would not swear that it was not there showing on page 2 when I signed it. I just wasn't looking to see whether it was there or not. I only looked at the

place where he indicated for me to sign as a witness. He had his right hand over the bottom half and I did not try to look at his signature. I would not say that he did or did not have his signature on the will covered by his hand. If I had looked for his signature it is possible from the way his hand was that I could have seen it".

In other testimony Skluzak said he didn't remember seeing Houda sign the will.

The witness Chihak's statement was:

"I can't say yes or no whether Vaclav signed the will before we signed it. I won't say that he did sign it there first and I won't say that he didn't. He could have signed it there before us before we witnessed it, I just don't remember".

Another portion of Chihak's testimony concerning this point was as follows:

"Q. Do you remember seeing Vaclav sign the will? A. No.

"Q. You don't remember? A. I don't remember.

"Q. You don't remember whether he did or not? A. No, I woudn't say neither way".

In many particulars the testimony of the attesting witnesses was conflicting. Skluzak testified all three went up to the testator's office at the same time—Chihak said he and Vaclav went up together and he remained in the office alone while Vaclav went out to get Skluzak. Skluzak said he was the first witness to sign the will—according to Chihak he signed first (Skluzak's name appears as the first witness on the will itself). Skluzak said the will was signed while standing at a high table using a dip pen furnished by Vaclav—whereas Chihak states the will was signed while sitting at a low typewriter desk with a fountain pen furnished by Vaclav (a handwriting expert testified the same pen was used by all three in signing the instrument). Both witnesses testified the will was covered when they signed. According to Skluzak it was covered by testator's hand. Chihak said it was covered with a piece of paper. There were other inconsistencies in their testimony.

Before the hearing in county court Skluzak explained the details surrounding the execution and attestation of the

will to the attorney for the named executor. Following these conferences the attorney prepared the usual formal testimony of a witness to a will. As filled out, the form accorded with Skluzak's statements to the attorney. The witness read the form over "closely" and then signed. The testimony included the statement:

> "The said Instrument was signed by the said Vaclav F. Houda at Kimball in the County of Brule, State of South Dakota on the 17th day of November, 1949, the day it bears date in the presence of myself and of said Joseph Chihak * * *".

██ It is competent for a subscribing witness to impeach or deny the proper execution of a will. However, it is well-established that such testimony should be received with caution and considered with suspicion. 79 A.L.R. 394. The credibility of such witnesses and the weight and value of the same was for the trial court to determine. In re Kennedy's Estate, 71 S.D. 264, 23 N.W.2d 797; In re Thompson's Estate, 48 S.D. 474, 205 N.W. 47.

██ The challenged will was executed nearly six years before trial. It is clearly evident from the record that neither attesting witness retained a clear recollection of the details surrounding the execution of the will. Certainly their testimony was not the clear and satisfactory evidence necessary to defeat probate. The contestants' burden of proving lack of due execution was not sustained by mere lack of affirmative proof on the contested issue.

██ During the trial the proponents were allowed to cross-examine and impeach the testimony of the subscribing witnesses. This was not error. In a will contest all subscribing witnesses who are present in the county, and who are of sound mind, must be produced and examined. SDC 35.0303. This statutory command does not make them the witness of either party. They are more nearly in the status of witnesses called by the court. Neither party is bound by their testimony. Both parties may cross-examine and impeach when their testimony is hostile or adverse. Lott v. Lott, 174 Minn. 13, 218 N.W. 447.

██ There was no evidence in this case that the attestation clause of the will was read to, or by, the subscrib-

ing witnesses. None was necessary here. It has long been the rule in this state that the presumption of due execution arising from a will regular on its face, containing the undisputed signatures of the testator and subscribing witnesses, together with a full attestation clause does not need the support of the affirmative memory of either subscribing witness. In re Taylor's Estate, supra. An attestation clause is intended as a guard against falsehood and forgetfulness. Cum.Supp. Vol. 6, Page on Wills, § 374. Its recital of details duly performed should not be impeached years after the execution of the will by the faulty or failing memory of one, or both of the attesting witnesses. Hauer v. Hauer, supra; In re Dalton's Estate, 346 Mich. 613, 73 N.W.2d 266; In re Baur's Estate, 79 N.D. 113, 54 N.W.2d 891; Vol. 2, Page on Wills, § 756; In re Klein's Estate, 241 Iowa 1103, 42 N.W.2d 593.

The judgment of the trial court is affirmed.

All the Judges concur.